FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 1 5 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

MATILDA PRINCE

Criminal Indictment

No.  2 : 1 5 - C R - 0 3 7

THE GRAND JURY CHARGES THAT:

## COUNTS ONE THROUGH TWENTY-FIVE
### Health Care Fraud
### (18 U.S.C. § 1347)

1.     Beginning on a date unknown to the Grand Jury, but at least by in or about September 2011, and continuing until in or about February 2014, in the Northern District of Georgia, defendant, MATILDA PRINCE ("PRINCE"), aided and abetted by others known and unknown to the Grand Jury, did knowingly and willingly execute and attempt to execute a scheme and artifice to defraud Medicare and Medicaid, which are health care benefit programs affecting commerce, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payments for health care services.

### Background

At all times relevant to this Indictment, unless otherwise stated:

2.     Defendant PRINCE was the owner and operator of Pickens Eye Clinic, an eye care company located in Jasper, Georgia, that purported to provide a variety of optometry and ophthalmology services to a primarily senior citizen population.

3.     Eye Gallery 20/20, ("Eye Gallery") is an eye care company owned by Defendant PRINCE's brother, M. P., located in Calhoun, Georgia, that purported to provide a variety of optometry and ophthalmology services to a majority senior citizen population. Defendant PRINCE also worked for, advertised, and provided eye care services for Eye Gallery.

4.     Defendant PRINCE has never held any license from the Georgia State Board of Optometry in any of the professions licensed by that Board. Accordingly, defendant PRINCE has never been licensed in Georgia as a physician, optometrist, ophthalmologist, or dispensing optician.

5.     Medicare is a Federal health care program providing medical insurance benefits to persons over the age of 65 or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.  Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

6.     Georgia Medicaid ("Medicaid"), administered by the Georgia Department of Community Health, Division of Medical Assistance, was established to provide an array of health care services and benefits to those who, due to economic circumstances, could not otherwise afford such health care services and benefits. Medicaid is jointly funded by the State of Georgia and the

2

United States Department of Health and Human Services, acting through the Centers for Medicare and Medicaid Services. Medicaid is a public plan or contract, affecting commerce, under which medical benefits, items, and services are provided to individuals. Medicaid is a "health care benefit program, "as defined by Title 18, United States Code, Section 24(b).

7.     Medical providers bill Medicare and Medicaid for their services using a standard insurance claim form known as CMS or HCFA 1500. These forms can be submitted to Medicare and Medicaid either electronically or mailed in hard copy form. Among other things, the form requires that medical providers identify the dates on which the services were rendered, the specific services provided as identified by the Current Procedural Terminology ("CPT") code, and the identity of the individual medical provider performing the services. The medical provider for each claim is identified by a unique provider number assigned by Medicare and Medicaid to each particular provider and, in the case of individual provider physicians, is tied to that person's identity alone.

8.     The Physicians Current Procedural Terminology Manual (the "CPT Manual") is a publication of the American Medical Association that contains a listing of descriptive terms and identifying codes for reporting and billing medical services and procedures, which has to be included in each claim to designate the particular service provided to a patient on a particular date.  The CPT Manual provides numeric codes, commonly known as CPT codes, for virtually all medical and diagnostic services, to be used in identifying for the insurer the nature and level of the service being performed.  There are CPT codes assigned to various optometry services. For example, CPT code 68761 is used to

bill for closure of the lacrimal punctum by plug.  Closure of the lacrimal punctum by plug is accomplished by the insertion into the tear duct of a punctual plug, a small medical device that blocks the tear duct to prevent drainage of liquid from the eye, for the purposes of treating dry eye conditions.

9.     In order to obtain reimbursement for the eye care services allegedly performed by Pickens Eye Clinic and Eye Gallery, defendant PRINCE entered, and caused CPT codes to be entered for each service claimed on a HCFA 1500, which was then electronically submitted to Medicare and Medicaid.  Medicare and Medicaid, by and through fiscal intermediaries, relied on the CPT codes that were submitted in paying the claims.  The HCFA 1500 forms were submitted to Medicare and Medicaid using the names, identities, and uniquely assigned provider numbers of two medical providers, who were licensed optometrists, employed by defendant PRINCE.

10.   On or about October 22, 2010, defendant PRINCE was ordered in a proceeding in DeKalb County Superior Court within the Northern District of Georgia, not to receive any benefits, try to receive any benefits, or be employed or involved with any entity or agency that received Medicaid or Medicare funding for a period of ten years and to pay restitution in the amount of $109,712.26 to Georgia Medicaid and its then-associated contractor, Avesis.

11.   Effective on or about September 20, 2011, Pickens Eye Clinic was excluded by the U.S. Department of Health and Human Services from participation in Medicare, Medicaid, and all Federal health care programs,

making it ineligible to submit or cause claims to be submitted to Federal health
care programs for any services provided after that date.

## Scheme and Artifice to Defraud

12.   The object of the scheme to defraud was for defendant PRINCE to steal
money from Medicare and Medicaid by submitting and causing to be submitted
fraudulent optometry claims on behalf of senior citizen patients, enticed by
promises of free prescription glasses, when in fact the optometry services
claimed had not been provided.

13.   As part of the scheme to defraud, defendant PRINCE generated business
by soliciting administrators of private and public housing complexes with large
senior citizen populations, as well as churches and community centers, who
allowed her to advertise and offer on-site eye exams and prescription glasses at
no charge to Medicare and Medicaid recipients through her associated
companies, Pickens Eye Clinic and Eye Gallery.

14.   As part of the scheme to defraud, defendant PRINCE hired two licensed
optometrists, D. P. and C. L., through a third-party physician contracting agency
enabling her associated companies, Pickens Eye Clinic and Eye Gallery, to
provide optometry services.

15.   As part of the scheme to defraud, defendant PRINCE traveled with these
optometrists to private and public housing complexes with large senior citizen
populations, as well as churches and community centers, and informed the
Medicare and Medicaid recipients that the cost of eye exams and prescription

glasses would be fully covered under Medicare and Medicaid. Defendant PRINCE assisted the optometrists with providing these eye exams.

16.   In furtherance of the scheme to defraud, after defendant PRINCE received Medicare and Medicaid numbers from the recipients, defendant PRINCE fraudulently used the identities of those recipients and the identities and uniquely assigned provider numbers of licensed optometrists D. P. and C. L. to submit and cause to be submitted fraudulent claims for complex and invasive optometry services, including (a) claims for "closure of the lacrimal punctum by plug" corresponding to CPT code 68761, and (b) backdated claims for optometry services which were not in fact rendered to the recipients. The fraudulent claims falsely identified optometrists D. P. and C. L. as the performing providers for these services.

### Execution of Defendant's Scheme to Defraud

17.   On or about the claim submission dates listed below, in the Northern District of Georgia, defendant PRINCE knowingly and willfully executed the above-described health care fraud scheme by submitting and causing to be submitted to Medicare and Medicaid fraudulent claims falsely representing that on or about the dates of service specified below, the patients specified below received the services identified by the CPT codes specified below, when in fact the patients did not receive the optometry services claimed:

| COUNT | DATE OF SERVICE | DATE CLAIM SUBMITTED | CPT CODE | PATIENT |
|---|---|---|---|---|
| 1 | 9/10/2011 | 9/4/2012 | 68761 | M. D. |
| 2 | 6/27/2011 | 7/10/2012 | 68761 | W. M. |
| 3 | 7/18/2011 | 7/10/2012 | 68761 | W. M. |
| 4 | 8/8/2011 | 7/10/2012 | 68761 | W. M. |
| 5 | 6/27/2011 | 7/10/2012 | 68761 | D. S. |
| 6 | 7/18/2011 | 7/10/2012 | 68761 | D. S. |
| 7 | 8/8/2011 | 7/10/2012 | 68761 | D. S. |
| 8 | 8/12/2013 | 1/27/2014 | 68761 | A. P. |
| 9 | 8/12/2013 | 1/27/2014 | 68761 | A. P. |
| 10 | 8/12/2013 | 1/27/2014 | 68761 | A. P. |
| 11 | 8/12/2013 | 1/27/2014 | 68761 | A. P. |
| 12 | 9/13/2013 | 1/21/2014 | 68761 | C. H. |
| 13 | 10/4/2013 | 1/6/2014 | 68761 | C. H. |
| 14 | 11/15/2013 | 2/24/2014 | 68761 | C. H. |
| 15 | 7/31/2013 | 2/10/2014 | 68761 | K. W. |
| 16 | 7/31/2013 | 2/10/2014 | 68761 | K. W. |
| 17 | 7/31/2013 | 2/10/2014 | 68761 | K. W. |
| 18 | 7/31/2013 | 2/10/2014 | 68761 | K. W. |
| 19 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 20 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 21 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 22 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 23 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 24 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |
| 25 | 8/16/2013 | 1/21/2014 | 68761 | L. R. |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## **FORFEITURE PROVISION**

Upon conviction for one or more of the health care fraud offenses alleged in Counts One through Twenty-Five of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(7); and Title 28, United States Code, Section 2641(c), all property constituting and derived from proceeds obtained directly or indirectly as a result of said violations.

If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section 982 (b) and Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A _____T RUE_____ BILL

_____

FOREPERSON

JOHN A. HORN
  *United States Attorney*

BERNITA B. MALLOY
  *Assistant United States Attorney*
Georgia Bar No. 718905

LYNDIE M. FREEMAN
  *Special Assistant United States Attorney*
Georgia Bar No. 119499

600 U.S. Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

9